# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

THOMAS E. TERRELL, as Personal
Representative of the Estate of Aaron F.
Zylstra, deceased, et al.,

                    Plaintiffs,

-vs-                                    Case No.  6:09-cv-1440-Orl-28DAB

CITY OF PALM BAY, FLORIDA, a
municipal corporation of the State of
Florida, et al.,

                    Defendants.
_____

## ORDER

On June 8, 2007, twenty-nine-year-old Aaron Zylstra was shot and killed by Palm Bay,

Florida police.  This suit against four police officers—Jasmine Campbell, Clifford Graves,

Tom Ribnicky, and Steve Smith—and the City of Palm Bay ("the City") has been brought by

Zylstra's parents and the personal representative of his estate pursuant to 42 U.S.C. § 1983

and the Florida Wrongful Death Act.[1]  Plaintiffs allege that in shooting and killing Zylstra, the

police officers used excessive force in violation of the Fourth and Fourteenth Amendments

to the United States Constitution, and Plaintiffs allege that the City may also be held liable

for the officers' conduct.

The case is now before the Court on the motions for summary judgment filed by the

officers and the City (Docs. 118 & 120), Plaintiffs' responses thereto (Docs. 129 & 130), and

---

[1]§§ 768.16-.26, Fla. Stat.

the replies filed by the Defendants (Docs. 133 & 134).  Having considered the parties'

submissions and applicable law, the Court concludes that the officers' motion must be

denied and the City's motion must be granted.

## I.  Background

On the evening of June 7, 2007, Dann Fazio happened to run into a childhood friend,

Aaron Zylstra, at a bar on A1A in Brevard County.  Fazio had not seen Zylstra in a few years,

and the two spent the evening catching up and visiting a few other establishments.  Having

consumed a pitcher and a half of beer apiece and splitting a bar of Xanax over the course

of the evening, they left the last bar when it closed at 2:00 a.m. on June 8.  After stopping

briefly at Zylstra's house, they "decided to get high" and drove over to Palm Bay and bought

two rocks of crack cocaine from a dealer whom Zylstra knew.  (Fazio Dep. at 28-29, 32).

Although originally they had intended to go back to Zylstra's house to smoke the crack, they

instead pulled onto a side street, Maplewood Drive, to get high.  (Id. at 29, 32).

Meanwhile, that night Officers Tom Ribnicky, Clifton Graves, and Steve Smith of the

Palm Bay Police Department were working in a crime suppression unit on a commercial

burglary detail nearby.  Ribnicky and Graves were wearing plain clothes and traveling

together in an unmarked Kia sport utility vehicle; Smith was in uniform and in a marked patrol

car a short distance away.  Ribnicky and Graves observed a dark vehicle—Zylstra's black

Honda Civic—driving slowly on Maplewood Drive without its headlights on; the car stopped

and started periodically, and the officers could see the vehicle's brake lights go on and off.

After observing the vehicle, Ribnicky called Smith on his Nextel phone and asked him to

check out the vehicle.  Smith informed another officer, Jasmine Campbell, who was near him when he received the call, of this directive, and Smith and Campbell drove in their separate marked patrol cars to Maplewood Drive and parked near the dark vehicle.

The details of the events that then unfolded vary somewhat from witness to witness. However, it is largely undisputed that at least two of the officers approached the car and asked the occupants to get out, and it is further undisputed that at some point during the encounter, Zylstra attempted to drive away and escape.  When Zylstra tried to drive away, Officer Smith yelled for him to stop the car, but Zylstra did not stop.  When Zylstra did not comply, Smith fired three shots with his gun.  A fourth shot was fired by Officer Ribnicky. Two of Smith's shots struck Zylstra, and he died at the scene.

Plaintiffs filed this action in state court on June 5, 2009, (Doc. 4), and Defendants removed the case to this Court shortly thereafter, (Doc. 1).  In the Amended Complaint (Doc. 43), Plaintiffs set forth ten counts:  five counts pursuant to 42 U.S.C. § 1983—one against the City and one against each of the four officers—alleging violation of Zylstra's constitutional rights; and five counts under the Florida Wrongful Death Act—again, one against the City and one against each of the four officers—seeking to recover compensation for Zylstra's survivors based on the alleged unconstitutional killing of Zylstra.  Defendants have moved for summary judgment on all claims, and their motions are ripe for adjudication.

## II.  Discussion

### A.  Summary Judgment Standards

Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.' Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Sw. Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

B.  The Merits of Defendants' Motions

1.  The Officers' Motion (Doc. 118)

In Counts II, III, IV, and V, Plaintiffs bring claims for violation of the Fourth and Fourteenth Amendments against Officers Graves, Ribnicky, Smith, and Campbell.  In their summary judgment motion, the officers[2] assert entitlement to the defense of qualified immunity.  "Qualified immunity protects municipal officers from liability in § 1983 actions as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "To receive qualified immunity, the officer must first show that he acted within his discretionary authority."  Id.  In the instant case, there is no assertion that the officers were not acting within their discretionary authority at the time of the events at issue.  Thus, "the burden . . . shifts to the plaintiff to show that qualified immunity should not apply."  Id.

"The Fourth Amendment's freedom from unreasonable searches and seizures . . . encompasses the right to be free from the use of excessive force in the course of an investigatory stop[] or other 'seizure' of the person."  Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004).  "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen [are] analyzed under the Fourth Amendment and its 'reasonableness' standard."

---

[2]The officers clearly played different roles in the subject incident, but in their summary judgment motion the officers have not broken down their argument for qualified immunity with regard to the distinct actions of each officer.  The officers are treated collectively in this Order as well, and none of them shall be granted qualified immunity.

Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis removed).

"In determining whether the officers' force was reasonable, [a court] must determine 'whether a reasonable officer would believe that this level of force is necessary in the situation at hand.'" Mercado v. City of Orlando, 407 F.3d 1152, 1157 (11th Cir. 2005). "[T]he reasonableness of a 'particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "[T]here is no precise test or 'magical on/off switch' to determine when an officer is justified in using excessive or deadly force." Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009) (citing Scott v. Harris, 550 U.S. 372, 382 (2007)). "[T]he particular facts of each case must be analyzed to determine whether the force used was justified under the totality of the circumstances. '[I]n the end [the court] must still slosh [its] way through the factbound morass of reasonableness.'" Id. (quoting Scott, 550 U.S. at 383) (internal citation and further quotation omitted).

In the instant case, summary judgment cannot be granted on qualified immunity because of disputed issues of material fact with regard to the reasonableness of the use of deadly force against Zylstra.  Although "[t]he only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded," id., here there are disputes as to the circumstances that the officers faced.  The Court must construe the facts as to what occurred at the scene in Plaintiff's favor at this stage of the case; under the scenario described by Fazio in his deposition, qualified immunity cannot be granted.  "Where, as here, the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability."  Sova v. City of Mt. Pleasant, 142 F.3d 898,

-6-

903 (6th Cir. 1998).

It is undisputed that at the time of the shooting, Zylstra was trying to drive away in the car and escape.  The driver's door of the car was open, and at least one of the officers was within or near the "V" of the open driver's door of the car when the shots were fired.  Nevertheless, there are material factual disputes as to whether Zylstra posed an immediate threat to one or more of the officers just before the shooting so as to justify the use of deadly force.  "Where [a] subject poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to" apprehend him.  Tennessee v. Garner, 471 U.S. 1, 11 (1985).  Moreover, "[w]here a police officer unreasonably places himself in harm's way, his use of deadly force may be deemed excessive."  Kirby v. Duva, 530 F.3d 475, 482 (6th Cir. 2008).

Fazio testified in his deposition that Zylstra initially got out of the car when asked to do so by one of the officers, but he then suddenly jumped back into the car and tried to make a U-turn and drive away.  (Fazio Dep. at 38, 77).  According to Fazio, the officer who told Zylstra to get out of the car was ten to fifteen feet away from the car while he was telling Zylstra to get out of the car, (id. at 98, 101-02); when Zylstra jumped back into the car, that officer ran toward the car as it was turning and began running next to the car, (id. at 38, 45, 77, 98, 101-02).  Fazio acknowledged that while the car was moving with the officer running next to it, the officer could have been run over if he had fallen down; however, Fazio also testified that the officer would have been in no danger if he had merely taken a step back.  (Id. at 56, 84).  Fazio testified that the officer "could have gone a million different other routes[] other than shooting" Zylstra and that the officer "put himself in danger, and then he

shot" Zylstra.  (Id. at 78).

According to Fazio's deposition testimony, Zylstra was attempting to flee and no one was in danger until the officer ran toward the car and placed himself in the "V" of the open car door to try to stop Zylstra from escaping.  The events at issue occurred within a matter of seconds, and the exact positioning of the officers at key moments cannot be determined on summary judgment.  If Fazio's version of events is believed by the jury and reveals that no one was in immediate danger, the use of deadly force could be found to be excessive. See, e.g., Estate of Starks v. Enyart, 5 F.3d 230, 233 (7th Cir. 1993) (noting that the police knew that driver was trying to escape and that the "escape attempt did not involve menacing a police officer or civilian with a weapon . . . until [officer] stepped into the path of a car that had just begun to accelerate quickly"); Sigley v. City of Parma Heights, 437 F.3d 527 (6th Cir. 2006) (reversing summary judgment on qualified immunity issue where there was factual dispute as to whether officer was initially in a position of safety but then placed himself in danger just prior to shooting driver).  Thus, the officers' motion for summary judgment must be denied.

2.  The City's Motion (Doc. 120)

Plaintiffs also have sued the City, alleging that the application of excessive force in this case was caused by a policy, custom, or practice of the City.  In the Amended Complaint, Plaintiffs allege, inter alia, that the City "fail[ed] to enact or promulgate sufficient policies or procedures to insure against the deliberate indifference to [Zylstra]" and "had a custom and practice of condoning and permitting excessive use of force in the control of potential arrestees[] and of permitting routine use of excessive force for purposes of

-8-

punishment and control." (Am. Compl. ¶ 28).

The doctrine of respondeat superior does not apply in actions under § 1983, and a municipality may only be held liable when the injury caused was a result of municipal policy or custom.  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691-92 (1978). Moreover, "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "To establish a city's deliberate indifference, 'a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.'"  Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1293 (11th Cir. 2009) (quoting Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)).  "A city may be put on notice in two ways"—if it is aware of "a pattern of constitutional violations" but "nevertheless fails to provide adequate training" or "if the likelihood for constitutional violation is so high that the need for training would be obvious."  Id.

The City seeks summary judgment, arguing that there is no record evidence establishing a custom or policy of allowing excessive force, a lack of training, or an obvious need for better or different training.  In support of the motion, the City has submitted evidence of its training policy and general order regarding use of force, including deadly force.  (See Exs. A, B, & C to Doc. 71).  The City also notes that Plaintiffs have not identified any prior incidents involving inappropriate use of deadly force by City police officers, nor have they identified any incident supporting the allegations of the Amended Compliant that

the officers had "a known propensity for violence and poor judgment."[3]

In response, the only evidence cited by Plaintiffs regarding a lack of training by the City is the deposition testimony of their police practices expert, William Gaut.  However, Gaut's testimony does not support a finding of municipal liability.  In the cited deposition testimony, Gaut opines that he concluded there had been a failure to train because excessive force was used by several officers and because the City constructively approved that use of force by finding—after its internal investigation of the incident—no violation of policy. (Gaut Dep. at 81-82).  In other words, the fact that the incident occurred at all, along with the City's post-incident behavior, led Gaut "to a reasonable conclusion that at some point in the past, [the officers] have not been properly trained."  (Id. at 83).  Gaut did not review any of the training that was actually provided, nor did he even review the City's policies prior to forming his opinions.  (Id. at 83, 88-89).  Rather, to Gaut, it merely "seem[ed] apparent" that the training on deadly force was inadequate.  (Id. at 84).

Gaut's testimony does not establish a failure to train.  Gaut merely concluded based on what occurred that the officers were not properly trained.  This type of conclusory assertion will not support municipal § 1983 liability, and Plaintiffs have presented no other evidence supporting an actionable failure to train or other municipal policy.

Plaintiffs also argue that the City's investigation of the incident—which resulted in a finding by the Chief of Police that there was no violation of policy and established "new policy"—constitutes an actionable "single decision" by a "policymaker" under Pembaur v. City

---

[3](See Am. Compl. ¶ 30).

of Cincinnati, 475 U.S. 469 (1986).   However, this argument is not well-taken.   The investigation occurred after the fact and cannot constitute the requisite direct causal link between a municipal policy and any constitutional deprivation suffered by Zylstra.   See Bolander v. Taser Int'l, Inc., No. 07-cv-80789, 2009 WL 2004379, at *16 (S.D. Fla. July 9, 2009) ("Even if the City conducted no investigation after the incident, Plaintiffs could not show that the failure to investigate caused the use of excessive force.   A different result would simply result in respondeat superior liability."); see also Mettler v. Whitledge, 165 F.3d 1197, 1205 (8th Cir. 1999) (noting that "[e]vidence that a police department has failed to investigate *previous* incidents similar to the incident in question may support a finding that a municipal custom exists" but that any shortcomings in investigation of the subject incident "would not prove the flawed investigation was a moving force behind [officers'] alleged misconduct") (emphasis added). The claims against the City must be dismissed.

### III.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  The Motion for Final Summary Judgment (Doc. 118) filed by Defendants Campbell, Graves, Ribnicky, and Smith is **DENIED**.

2.   The Motion for Final Summary Judgment (Doc. 120) filed by Defendant City of Palm Bay is **GRANTED**.   The claims against the City—Counts I and VI of the Amended Complaint (Doc. 43)—are **DISMISSED**.

**DONE** and **ORDERED** in Orlando, Florida this 1st day of October, 2010.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record